Deborah A. Wolfe, Esq. (SBN 97971)
WOLFE LEGAL GROUP, PC
402 W. Broadway, Suite 400
San Diego, California 92101
Telephone: (619) 234-3363
Facsimile:  (619) 231-1989
Email: dwolfe@wolfelegalgroup.com

Attorneys for Plaintiff, MICHAEL L. SMITH

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL L. SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>JORDAN RAMIS PC, DOUGLAS P. CUSHING,<br><br>    Defendants. | CASE NO. 12-CV-2025 W (WMc)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT**<br><br>**DATE: JULY 29, 2013**<br><br>Dept.  Courtroom 7 (3rd Floor)<br>Judge:  Hon. Thomas J. Whelan |

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

1

12CV2025

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................iii

I. INTRODUCTION...............................................................................2

II. STATEMENT OF KEY FACTS.........................................................2

III. SUMMARY OF ARGUMENT..........................................................4

    A.    Actual Injury and Continuous Representation Toll the Statute of Limitations..........................................................................4

    B.    Misrepresentations......................................................................5

IV. LEGAL ARGUMENT.......................................................................6

    A. The Summary Judgment Standard..................................................6

    B.    Disputed Questions of Fact Preclude Summary Judgment on the Basis of The Statute of Limitations For Smith's Legal Malpractice and Fraud Claims..........................................................................7

        1.    The Tolling of the Statute of Limitations for Legal Malpractice Depends on the Facts..........................................................................7

        2.    The Facts Surrounding the Tolling of the Statute of Limitations Are Disputed, Precluding Summary Judgment..........................................................................8

            a.    No Actual Injury Occurred Until November 2011..........................................................................8

            b.    Continuous Representation Tolled the Statue of Limitations Until November 2011...................10

        c.     Smith Has Presented Evidence of Fraud and Disputed Questions of Fact Preclude Entry of Summary Judgment..........................................12

IV. CONCLUSION..................................................................................13

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Anderson v. Liberty Lobby, Inc.*
  (1986) 477 US 242, 255, 106 S Ct 2505, 91 L Ed2d 202..........................6

*Baltins v. James*
  (1995) 36 Cal.App.4th 1193..........................9

*Braxton-Secret v. A.H. Robins Co.*
  (9th Cir 1985) 769 F2d 528..........................6

*Celotex Corp. v. Catrett*
  (1986) 477 US 317, 323, 106 S Ct 2548, 91 L Ed2d 265..........................6

*Citizens for Better Forestry v. USDA*
  (9th Cir 2003) 341 F3d 961..........................6

*Dominguez-Curry v. Nevada Transp. Dep't*
  (9th Cir 2005) 424 F3d 1027..........................7

*Foxborough v. Van Atta*
  (1994) 26 Cal.App.4th 217..........................9

*Gonzalez v. Kalu*
  (2006) 140 Cal.App.4th 21..........................11

*Hensley v. Caietti*
  (1993) 13 Cal.App.4th 1165..........................10

*Jordache Enterprises v. Brobeck, Phleger & Harrison*
  (1998) 18 Cal.4th 739..........................8

*Laclette v. Galindo*
  (2010) 184 Cal.App.4th 919..........................10,11

*Laird v. Blacker*
  (1992) 2 Cal.4th 606..........................9

*Leslie v. Grupo ICA*
  (9th Cir 1999) 198 F3d 1152..........................7

*ITT Small Business Finance Corp. v. Niles*
  (1994 ) 9 Cal.4th 245..................................................................................9

*Truong v. Glasser*
  (2009) 181 Cal.App.4th 102..................................................................8,10

*Turley v. Woolridge*
  (1991) 230 Cal.App.3d 586.......................................................................10

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*
  (9th Cir 1987) 809 F2d 626.......................................................................6,7

*UMG Recordings, Inc. v. Sinnott*
  (ED Cal 2004) 300 F Supp2d 993................................................................6

## Statutes

California Code of Civil Procedure § 340.6....................................................4,7

California Code of Civil Procedure §340.6(a)(2)....................................4,10,12

## I. INTRODUCTION

In this legal malpractice case, Plaintiff Michael Smith alleges that defendants committed multiple and sequential instances of malpractice over the course of four years beginning in 2006, including that Defendants misled him as to their ability to assist Smith to prepare enforceable documents to spell out Smith's rights in California, improperly advised him about and inadequately drafted a Domestic Partnership Agreement and Promissory Note, provided inaccurate advice as to the mechanics of executing the agreement, and misdirected him about the enforcement and terms of the agreement. As a result of vaguely worded language and the insistence that the domestic partnership be registered with the State of California or else would be unenforceable, Smith was forced into acrimonious litigation in family court with his former partner and suffered significant losses when the Domestic Partnership Agreement was held to be invalid. Defendants now challenge the timeliness of this lawsuit for professional negligence, breach of fiduciary duty, and fraud. Defendants' summary judgment motion relies on the one-year statute of limitations from discovery of the professional negligence. Defendants try to avoid the tolling provisions of the statute of limitations by claiming actual injury occurred at a certain date and that there was no continuous representation. This inquiry is an intensely factual one, and in this case the facts critical to the application of the tolling provisions are disputed. Defendants further claim Cushing made no misrepresentations and Smith did not rely on them to defeat the fraud causes of action. The evidence on these issues is likewise highly disputed.

## II. STATEMENT OF KEY FACTS.

Plaintiff Michael Smith's uncle, Defendant Douglas Cushing, was Mr. Smith's family attorney for many years on a variety of Mr. Smith's business projects and did Mr. Smith's estate planning. (UMF 5.)[1] In 2006, Mr. Smith turned to Mr. Cushing when he needed legal assistance to spell out his rights and liabilities in connection with the purchase of a house in San Diego with his romantic partner, Christopher Wixom, M.D. (UMF 6.) Mr. Smith first inquired, though, whether Mr. Cushing was qualified to perform those services as Mr. Smith had never been a party to a domestic partnership and Mr. Cushing had never

---

[1] The references to "UMF" are to Plaintiff's Response to the Separate Statement of Undisputed Material Facts and the evidence set forth therein, filed and served concurrently herewith.

12CV2025

2

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

performed any legal services for Mr. Smith that involved domestic relationships before. (UMF 44.) Mr. Cushing said he could do the work and that an attorney at his firm, Jordan Ramis (collectively "Cushing") was licensed in California, even though he himself was not licensed to practice law there. (UMF 9, 33.) Therefore, Smith retained Cushing to do the work. (UMF 9, 33, 34.)

Mr. Cushing prepared a Domestic Partnership Agreement ("DPA") purporting to spell out the rights and liabilities of Mr. Smith and Dr. Wixom with respect to the residence they purchased together and how their living expenses were to be allocated, among other things. (UMF 10.) Mr. Cushing also prepared a Promissory Note secured by a Deed of Trust against the residence. (UMF 9.) Mr. Cushing incorrectly advised Mr. Smith that he and Dr. Wixom were *required* to register with the State of California as Domestic Partners in order for the Domestic Partnership Agreement to be effective. (UMF 45.) Mr. Cushing gave Mr. Smith and Dr. Wixom no instructions regarding Dr. Wixom obtaining independent legal review of the DPA, or the timing of the signing of the DPA, both of which are critical elements to an effective DPA in California. (UMF 48.)

In October of 2009, Mr. Smith and Dr. Wixom separated and Mr. Smith turned to his trusted attorney, Mr. Cushing, for advice regarding the definition of "combined living expenses" as drafted by him in the Domestic Partnership Agreement. Mr. Cushing informed Mr. Smith that the term meant *all* of Mr. Smith's living expenses and Dr. Wixom's were to be divided 50/50 between Dr. Wixom and Mr. Smith. (UMF 42.) When Mr. Smith took that position with Dr. Wixom and asked him for reimbursement for his share of their combined living expenses, a lengthy and acrimonious dissolution proceeding in family court ensued. (UMF 43.) Dr. Wixom has testified that Smith's demand for the 50/50 split of their combined living expenses, is what caused him to seek legal counsel in the dissolution. (UMF 43.)

Although Mr. Smith expressed his unhappiness to his uncle, Mr. Cushing, about the quality of his firm's work in drafting the agreement, he never told Mr. Cushing or anyone else from his firm that Mr. Smith was terminating him or his firm's representation of Mr. Smith. (UMF 19.) In fact, Mr. Smith expected Mr. Cushing to assist his family law attorney in California, Eugene Bruno, in cleaning up what was, essentially, the mess that Mr. Cushing had created. (UMF 19, 44.) Mr. Cushing expressed his willingness to assist, provided his files and notes to Mr. Bruno, and spoke to Mr. Bruno about how the

12CV2025

3

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

terms of the DPA were intended to be interpreted. (UMF 19, 45.) Mr. Cushing continued to perform legal services for Mr. Smith by revising his estate documents after his relationship with Dr. Wixom ended. (UMF 16.) As far as Mr. Smith was concerned, it was his understanding and belief that Mr. Cushing was continuing to represent his interests by assisting in the first phase of his dissolution case set for trial in San Diego in November 2011. (UMF 19, 44.) Mr. Smith timely filed this lawsuit for professional negligence and fraud on June 25, 2012. (UMF 1.)

Mr. Smith settled the remaining issues in the family law dissolution case in December 2012. As a result of Mr. Cushing's negligence surrounding the drafting and execution of the DPA and his advice that registering with the State of California was required, Mr. Smith suffered an adverse outcome in the dissolution proceedings and damages in excess of $800,000.

The defendants cannot prevail on their motion for summary judgment due to the highly factual nature of the issue of Mr. Cushing's continuing representation which tolled the statute of limitations contained in California Code of Civil Procedure § 340.6. Likewise, there is evidence supporting the misrepresentations made by Mr. Cushing for the causes of action for fraud and deceit, concealment and negligent misrepresentation which is highly factual and disputed in this case.

### III. SUMMARY OF ARGUMENT

#### A. Actual Injury and Continuous Representation Toll the Statute of Limitations.

Cushing argues that the entire complaint, which was filed on June 25, 2012, is barred by the one-year statute of limitations for legal malpractice because by August 10, 2010, Smith was on notice of the claimed wrongdoing and had been damaged by it, and because Cushing had ceased representing Smith.

The statute of limitations is tolled in two circumstances, (1) until the client has suffered actual injury; and (2) while the attorney continues to represent the client on the same subject matter that is the subject of the legal malpractice claims. (California Code of Civil Procedure §340.6(a)(2).)

Here, the evidence, is that the Domestic Partnership Agreement prepared by Cushing was not ruled to be invalid and unenforceable until October, 2011, and judgment was not entered until November 17, 2011. (UMF 24 [Defendants' Ex. 97].) That is when Smith suffered actual injury. Until then, there was no determination that Cushing's legal work had caused Smith to lose any right, remedy or interest. Cushing

12CV2025

4

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

argues, on the other hand, that Smith suffered actual injury as early as when Smith entered into the DPA in 2006. (Defendant's Memorandum of Points and Authorities, p. 10.) Defendants argue Smith was damaged when he registered as a domestic partner in 2007, when the 2008 trust deed securing the promissory note was recorded in 2008, when Smith began incurring attorneys fees to Bruno in 2010, and when Wixom filed a challenge to the DPA and promissory notes in February 2011. (*Id.*)

The facts regarding continuous representation are also highly disputed. On August 20, 2010, Smith sent Cushing an email expressing his dissatisfaction with the documents prepared by Cushing that Smith had been told were vague. (UMF 18.) Smith testifies that he did not terminate Cushing at any time. (UMF 19.) Smith further testifies that he expected and understood that Cushing was continuing to represent his interests by assisting with the dissolution matter. (UMF 19.) Smith further testifies that he talked to Cushing who agreed to cooperate with and assist Bruno. (UMF 19.) Smith testifies Cushing performed further services after the August 20, 2010 email to unwind the changes to Smith's will that had been made by Cushing to document the provisions of the DPA. (UMF 19.)

Bruno testifies he talked to Cushing and obtained his file in April 2011. (UMF 25.) Bruno also testifies he talked to Cushing about strategy and the facts of the case as late as September 2011, within 30 days of the bifurcated trial in October 2011. (UMF 28, 30.) Cushing, on the other hand, disputes that the September 2011 conversation ever took place. (UMF 31.)

Cushing disputes that he was continuing to represent Smith based on the tone of Smith's August 20, 2010 email. (UMF 19.) Cushing concedes, however, that he never told Smith his representation of Smith had terminated. (UMF 19.) Cushing admits he talked with Bruno in early April 2011, and told Bruno he would be available as a professional courtesy, but did not expect to do anything other than provide the file. (UMF 19.)

**B.    Misrepresentations.**

Cushing argues that there is no evidence that Cushing made any misrepresentations about his capabilities or that he concealed his inadequacy to perform the task. Cushing further argues Smith did not rely on any such statements in retaining Cushing. The evidence on this issue is disputed. Cushing had never done a domestic partnership agreement or registered any domestic partnership for Smith before. (UMF 40.)

12CV2025

5

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

Smith had very little understanding of what a domestic partnership involved. (UMF 40.) Smith trusted Cushing, his uncle and attorney for the past five years, to be truthful with him about his ability to do the work. (UMF 19, 33.) Before this time, Cushing had only done Smith's estate planning work and some real estate transactional work for Smith. (UMF 19, 33.) Naturally, Smith asked point blank if Cushing could do the California domestic partnership work, *or if he could recommend someone else*. Cushing represented that he could do the work and that he had an attorney in his office who was licensed in California. Smith reasonably understood that statement to mean that Cushing was saying he had the experience, skills and knowledge necessary to do the work. Therefore, Smith, believing he could trust his uncle–and attorney–to tell the truth, and had Cushing perform the work, for which Cushing billed him over $6,000. (UMF 19;41.)

Cushing had done very little family law work and could not identify any prenuptial agreements he had done in the past. (UMF 7; 33 .) Cushing had only done one other domestic partnership agreement in Oregon, which was at the same time as or just prior to the one he did for Smith. (UMF 7.) Cushing had never been licensed to practice law in California. (UMF 35.) Cushing did not take any continuing education classes in Oregon or Washington in family law. (UMF 36.) No attorney from Cushing's firm with California experience or a California license spent any time on the Smith matter. (UMF 39.) Cushing admits he was unaware of the California requirements for enforceability of prenuptial agreements. (UMF 37.)

IV. **LEGAL ARGUMENT**

A. **The Summary Judgment Standard.**

The moving party has the burden of showing the absence of any genuine issue of material fact. (*Celotex Corp. v. Catrett* (1986) 477 US 317, 323, 106 S Ct 2548, 91 L Ed2d 265.) Summary judgment is not appropriate even where the facts are undisputed if contradictory inferences may reasonably be drawn from those facts. (*Braxton-Secret v. A.H. Robins Co.* (9th Cir 1985) 769 F2d 528, 531.)

In determining whether a case presents any questions of material fact the trial court must view the evidence in the light most favorable to the nonmoving party (*Citizens for Better Forestry v. USDA* (9th Cir 2003) 341 F3d 961, 969.) This requires the trial court to believe the evidence of the opposing party, and to draw all reasonable inferences that may be drawn from the facts before the court in favor of the opposing

12CV2025

6

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

party. (*Anderson v. Liberty Lobby, Inc.* (1986) 477 US 242, 255, 106 S Ct 2505, 91 L Ed2d 202 ; *UMG Recordings, Inc. v. Sinnott* (ED Cal 2004) 300 F Supp2d 993, 997.) In drawing inferences in the light most favorable to the nonmoving party, the court may draw inferences from underlying facts not in dispute, such as background or contextual facts. The court may also draw inferences from underlying facts on which there is conflicting direct evidence, but on which the judge must assume may be resolved at trial in favor of the nonmoving party (*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n* (9th Cir 1987) 809 F2d 626, 631.)

Accordingly, when considering a summary judgment motion, the judge does not weigh conflicting evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. These determinations are within the province of the factfinder at trial. (*Dominguez-Curry v. Nevada Transp. Dep't* (9th Cir 2005) 424 F3d 1027, 1035-1036 ; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, supra,* 809 F2d at p. 630.) The nonmoving party's evidence must be taken as true. Even when direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the nonmovant's evidence with respect to that fact . (T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, supra, 809 F2d at p. 631; *Leslie v. Grupo ICA* (9th Cir 1999) 198 F3d 1152, 1158.)

      **B.**     **Disputed Questions of Fact Preclude Summary Judgment on the Basis of the Statute of Limitations For Smith's Legal Malpractice and Fraud Claims.**

          **1.**     **The Tolling of the Statute of Limitations for Legal Malpractice Depends on the Facts.**

In California, the statute of limitations begins to run when the plaintiff discovers or through the use of reasonable diligence should have discovered the facts constituting the wrongful act (one year limitations period), or from the date of the wrongful act or omission ( four year statute of limitations) Under California law, these periods of limitation are tolled until there is actual injury, and by continuing representation.

California Code of Civil Procedure § 340.6 provides in relevant part,

    (a)    An action against an attorney for a wrongful act or omission, other than for actual fraud,

7
12CV2025

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

arising in the performance of a professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

> (1) The plaintiff has not sustained actual injury;
>
> (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred....

Even where a plaintiff has discovered the facts constituting the professional negligence, the statute is tolled until actual injury has been sustained and during the continuing representation of the negligent attorney. (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 111.) Both the questions of when actual injury has been sustained and when an attorney's representation ends are intensely factual.

### 2. The Facts Surrounding the Tolling of the Statute of Limitations Are Disputed, Precluding Summary Judgment.

#### a. No Actual Injury Occurred Until November 2011.

In a case such as this one, the question of when actual injuries occurs has been the subject of varying interpretations in California. Neither the one-year statute of limitations nor the four year statute for attorney malpractice commences to run until there has been "actual injury." The question of when "actual injury" occurs, for purposes of commencing the running of the statute of limitations, is an intensely factual one that depends on the facts and circumstances of each case. (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 111.) There is no "bright line rule" to apply to determine when "actual injury" has occurred in for purposes of tolling the statute of limitations. (*Id.*)

Here, Smith did not lose any rights until November 17, 2011, when the family law court ruled that the DPA was unenforceable. Until that point in time, it was entirely possible that Smith could have prevailed and would not have suffered any lost right, remedy or interest.

Although Defendants argue that an adjudication or adverse ruling is not the critical factor under

12CV2025

8

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

*Jordache Enterprises v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, the circumstances of this case establish that the actual injury Smith suffered did not occur until his interpretation of the DPA was disavowed by the trial court. In the underlying family law litigation, Smith claimed the DPA was valid. Wixom prevailed in his case of first impression declaring the DPA to be akin to a premarital agreement and subject to the requirements of independent legal advice and sufficient time between presentation of the agreement and its execution. The family law litigation itself was the only way to determine the validity of the agreement and thus the attorney's malpractice.

In *Baltins v. James* (1995) 36 Cal.App.4th 1193, the court looked at the issue of actual injury in a transactional malpractice case and determined actual injury occurs on entry of an adverse judgment, settlement or dismissal of the underlying action, not upon execution of a quit claim deed. (*Baltins v. James, supra,* 36 Cal.App.4th at p.1208.) In *Baltins,* the attorney was accused of giving negligent advice regarding the effect of an appeal from a family law judgment. As a result of that advice, the client/husband executed a quitclaim deed and transferred certain community property. The client's former wife challenged the transfer and the family law court ultimately found the husband had breached his fiduciary duties and denied him reimbursement credits. The *Baltins* court found that it was not the execution of the quitclaim deed that constituted actual injury. It was not until the court ruled that the transfer was improper that actual injury occurred. The court relied on a long line of cases that looked at transactional malpractice cases where the adequacy of the documentation is at issue. In such cases, the propriety of the attorney's advice is contingent upon the outcome of the claim against the client. In such cases, "the client does not sustain actual injury until the claim is resolved adversely, which indicates both that the attorney erred and that the error caused harm." (*Baltins v. James, supra,* 36 Cal.App.4th at 1203; see also *ITT Small Business Finance Corp v. Niles* (1994) 9 Cal.4th 245, 258; *Laird v. Blacker* (1992) 2 Cal.4th 604, 614-615.)

In *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 227, the court ruled that actual injury occurs when the malpractice results in "the loss of a right, remedy, or interest, or in the imposition of a liability." The attorney had been retained to draft documents that, among other things, gave Foxborough the right to annex certain property automatically. The automatic annexation rights, which were important to Foxborough, were lost due to the attorney's negligence. Foxborough then retained another attorney to sue

12CV2025

9

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

to *recapture* the right to annex. The *Foxborough* court interpreted actual injury to have occurred when the original automatic annexation rights were lost, *not* when the subsequent litigation to recapture the right to annex reached final judgment. The subsequent litigation was merely an alternative means for obtaining monetary relief. Thus in *Foxborough*, the loss of a right, remedy or interest occurred first when the right to automatic annexation rights were first lost.

Here, the mere entry into the DPA and recording of the Promissory Note in 2006 and 2008 caused no injury at all. Consistent with *Foxborough*, it was not until the enforceability of and interpretation of those documents was adjudicated that an actual loss of a right (to enforce the terms of the DPA) was lost.

In *Truong v. Glasser* (2009) 181 Cal.App.4th 102, the court stated that there was no requirement of an adjudication or settlement to constitute actual injury where the outcome of the litigation would only affect the amount rather than the fact of injury. In *Truong*, the court found that actual injury occurred when the plaintiffs were required to obtain and pay new counsel to file suit to escape the consequences of signing a lease and addendum prepared by the negligent attorney. The terms of the lease and addendum immediately gave rise to issues which precluded the clients from obtaining permits to fully use the leased property. Although the *Truong* court ruled that under the facts and circumstances of that case actual injury occurred when new counsel was retained, the *Truong* court did not, however, rule out a situation like that in *Baltins* where an adverse judgment is the first moment that actual injury had occurred. (*Truong v. Glasser, supra,* 181 Cal.App.4th at 115.) Here, Smith suffered no loss upon entry into the DPA. On the contrary, had his interpretation of its terms been upheld, he would have been entitled to enforce its terms and could not have claimed any damages from his attorneys' actions.

This case is unlike the cases in which entry into an agreement causes immediate harm and is actionable at the time of contracting cited by Defendants. (E.g., *Hensley v. Caietti* (1993) 13 Cal.App.4th 1165; *Turley v. Woolridge* (1991) 230 Cal.App.3d 586.) In those cases, an attorneys' advice during the course of dissolution proceedings caused the client to lose rights the attorney was supposed to secure for them as soon as they entered into the agreement. Here, Smith did not lose any rights by entering into the Domestic Partnership Agreement, only upon it being declared unenforceable. No actual injury occurred until November 2011, and Smith's lawsuit was timely filed.

12CV2025
10
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

      **b.   Continuous Representation Tolled the Statute of Limitations Until November 2011.**

The statute of limitations for filing a legal malpractice action is tolled by a law firm's continuous representation of the client on the same subject matter in which the legal malpractice occurred. (Code Civ. Proc., §340.6, subd. (a)(2).) California case law that has addressed the issue found that the ongoing relationship should be viewed objectively from the client's perspective. (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 116; *Laclette v. Galindo* (2010) 184 Cal.App.4th 919, 929.) In *Laclette v. Galindo, supra,* the court described the objective standard, from the client's perspective as one dependent on the client's reasonable expectations :

> "Absent actual notice to the client that the attorney will perform no further legal services or circumstances that reasonably should cause the client to so conclude, a client should be entitled to rely on an attorney to perform the agreed services and should not be required to interrupt the attorney-client relationship by filing a malpractice complaint." To this extent and for these reasons, we conclude that continuous representation should be viewed objectively from the client's perspective ...." (*Laclette v. Galindo* (2010) 184 Cal.app.4th at 929.)

Mere silence on the part of the attorney is not sufficient to establish, as a matter of law, that representation has terminated. (*Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 27-30 [three years of silence insufficient]; *Laclette v. Galindo* (2010) 184 Cal.App.4th 919, 929 [two years of no communication did not implicitly terminate the representation].)

Here, Cushing admits he never advised Mr. Smith his representation of Mr. Smith had ended. (UMF 19.) Cushing states that after he received Mr. Smith's email in August 2010 he "did not expect to do anything beyond provide the file.," (UMF No.19.) It is not, however, the attorney's expectation but the *client's* that determines whether representation is continuing. (*Laclette v. Galindo, supra,* 184 Cal.App.4th at 929.)

Smith testifies that in fact he did *not* tell Cushing or anyone at his firm that he was terminating Cushing. (UMF 19.) On the contrary, Smith testifies he expected Cushing to help his California dissolution attorney and to continue to advance Smith's interests regarding the interpretation of the DPA. (UMF 19.)

12CV2025

11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

It was Smith's express understanding that Cushing was continuing to represent his interests through the conclusion of the first phase of the dissolution trial in October 2011. (UMF 19.) Consistent with that, Smith's California attorney Mr. Bruno testified he had a telephone conversation with Cushing as late as September 2011 to discuss strategy and his recollection regarding the intended interpretation of the DPA. (UMF 28.) Bruno viewed Cushing as much more than a mere historian, but rather as someone with whom he could discuss strategy regarding the ongoing litigation and someone who could provide information and insights to help Smith defeat Wixom's efforts; exactly what Smith reasonably expected of his attorney and family member. (UMF 28.) The malpractice lawsuit filed just eight months later is clearly well within the tolling provisions of CCP 340.6(a)(2).

### c. Smith Has Presented Evidence of Fraud and Disputed Questions of Fact Preclude Entry of Summary Judgment.

There is substantial evidence supporting the existence of a misrepresentation (intentional or negligently made) and or concealment of material facts. Cushing disputes this evidence, but cannot establish he is entitled to a summary judgment on that basis.

The evidence here shows that Smith had very little understanding of what a domestic partnership involved. Smith trusted Cushing, his uncle and attorney for the past five years, to be truthful with him about his ability to do the work. Naturally, Smith asked point blank if Cushing could do the California domestic partnership work, *or if he could recommend someone else*. Cushing represented that he could do the work and that he had an attorney in his office who was licensed in California. Smith understood that statement to mean that Cushing was saying he had the experience, skills and knowledge necessary to do the work. Therefore, Smith, believing he could trust his uncle to tell the truth, had Cushing perform the work, for which Cushing billed him over $6,000. These facts and the reasonable inferences that can be drawn from them establish both Cushing's representations that he was qualified to do the work, and Smith's reliance on them.

In fact, Cushing was woefully unqualified to perform the work Smith needed. Cushing admittedly had done very little family law work, and only in Oregon and Washington, never in California. Cushing had only done one other domestic partnership agreement and it was in Oregon, and done at the same time

12CV2025

12

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT

as or just prior to the one he did for Smith. Cushing had never been licensed to practice law in California. Cushing did not take any continuing education classes in family law even in Oregon or Washington. Cushing concedes no one at his firm who was licensed in California performed any work on Smith's matter. Cushing admits he was unaware of the California requirements for prenuptial agreements and did not advise Smith or Wixom about the requirements for signing the Domestic Partnership. It is a case of Mr. Cushing not even knowing what he didn't know about California law.

These facts, and the reasonable inferences that can be drawn from them, establish the falsity of Cushing's representations that he was qualified to perform the work Smith required.

### V. CONCLUSION

There are disputed questions of material fact on every aspect of the tolling of the statute of limitations on the professional negligence claims both with respect to actual injury and continuing representation barring a summary judgment on the basis that the statute of limitations bars these claims. There are also disputed issues of material fact regarding the representations made, Smith's reliance on those representations, and the falsity of the misrepresentations that preclude summary judgment on the fraud claims. In addition, the fraud claims are governed by a three year statute of limitations and are clearly timely filed. Based thereon, it is respectfully requested that Defendants' motion for summary judgment or in the alternative partial summary judgment be denied.

Dated: July 15, 2013                    Respectfully Submitted,


                                        /s/ Deborah A. Wolfe
                                        Deborah A. Wolfe
                                        Attorney for the Plaintiff, Michael L. Smith
                                        Email: dwolfe@wolfelegalgroup.com

12CV2025

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT